**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| JOHNNIE MCCARTHIAN, | : | |
| | : | CIVIL ACTION FILE NO. |
| Plaintiff, | : | |
| | : | 1:11-CV-2654-WSD-GGB |
| v. | : | |
| | : | |
| RICHARD MELTON, et al. | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

COME NOW, Defendants Richard Melton and Khalid Wise, and file this reply brief in support of their motion for summary judgment, showing this Court the following:

**I.   Defendants' Statement of Material Facts is not disputed.**

In response to Defendants' Statement of Material Facts, McCarthian attempts to dispute Defendants' Material Facts no. 11 and no. 18, but the record clearly shows that these facts are not in dispute. Defendants' material fact no. 11 states that "Johnnie McCarthian encountered Arthur Stinson again at the jail commissary without any incident occurring between the two inmates." In response to this fact, McCarthian states that "McCarthian saw Mr. Stinson from afar while

McCarthian was visiting the jail's commissary area." McCarthian further states "[t]he two did not interact or have the opportunity to interact." McCarthian rewords Defendants' material fact no. 11 but does not directly refute this fact with any evidence. A mere rephrasing of a material fact does not create a dispute. Thus, Defendants' material fact no. 11 is not disputed.

As to Defendants' material fact no. 18, there is no genuine dispute as to this fact as well even though McCarthian asserts that this fact is not supported by evidence. That assertion, however, is simply incorrect. TSheriff's policy no. 1500-17[1] clearly states, on page 3, that "[s]hift supervisors **will use discretion** in determining if an **Incident Report** should be prepared for non-significant occurrence, *such as* routine cell movements, the finding of loose change during cell shakedowns, *etc.*" Defendants' material fact no. 18 which stated that this particular policy "gives discretion to floor shift supervisors at the Fulton County Jail with respect to preparing incident reports" is clearly supported by evidence.

Although McCarthian may want to argue about the *degree* of the discretion given to shift supervisor, or even argue about what constitutes a *non-significant occurrence* under the policy, this alone does not negate the fact that the policy on its face gives discretion to shift supervisors at the Fulton County Jail by allowing

---

[1] Defendants' Exhibit #3 of their Motion for Summary Judgment.

them to "use discretion" when deciding to complete certain incident reports. Thus, this fact is clearly supported by evidence in the record.

## II. Defendants were not performing a ministerial act when deciding whether to report encounters between inmates at the Fulton County Jail.

McCarthian is seeking to hold Defendants liable for negligently performing a ministerial act under state law. McCarthian's asserts that the testimony provided by Melton and former Defendant Gerald Johnson, along with written policies of the Fulton County Sheriff's Office, support his contention that ministerial duties were imposed on both Melton and Wise to report and obtain information about the first encounter that occurred between McCarthian and Stinson in the cell on July 27, 2011.

Specifically, McCarthian contends that Melton had a duty to not only to provide a written report regarding the first incident between the inmates but also to inform officers on the subsequent shift about the initial incident. McCarthian also contends that Wise had a duty "to learn the reason [why] Mr. Stinson had been removed from his cell during shift change."

Defendants contend, however, that any duty to report any interactions or occurrences between inmates at the jail, whether in writing or verbally, is a discretionary act. Such acts are discretionary because an officer at the jail must use

his personal deliberation and judgment when determining what interactions between inmates rise to the level of requiring an incident report in accordance with the Sheriff' Department policies.  In an attempt to discredit Defendants 'argument, McCarthian relies on *Glass v. Gates*, 311 Ga. App. 563 (2011) *aff'd*, 291 Ga. 350, 729 S.E.2d 361 (2012).  Specifically, McCarthian asserts that *Glass* is factually analogous to the case at hand.  This assertion, however, is erroneous.

In *Glass*, the Georgia Court of Appeals defined a ministerial act as being "commonly one that is <u>simple, absolute, and definite</u>, arising under conditions admitted or proved to exist, <u>and requiring merely the execution of a specific duty</u>." 311 Ga. App. at 574 (emphasis added).  Further, the Court held that "[w]here there is an established policy requiring an official to take <u>specified action in a **specified**</u> <u>**situation**</u>, the policy creates a ministerial duty on the part of the official to perform the <u>specified task</u>." <u>Glass</u>, 311 Ga. App. at 575, 716 S.E.2d 611 (citing *Grammens v. Dollar,* 287 Ga. 618, 620, 697 S.E.2d 775).

With respect to the particular facts in *Glass*, the Court determined "that unwritten departmental policy, as described by [the defendant], required a work detail supervisor such as [the Defendant] to take <u>specified action (call the work</u> <u>camp and request a service truck) in a **specified situation** (when a tractor became</u> <u>stuck)</u>.  311 Ga. App. at 575.  Thus, *Glass* shows that *specificity* regarding a

specific task to be performed and the *specific situation* triggering the performance of a specific task is the key to determining whether an official's act is a ministerial one.

In the present case, the specificity that is needed to impose a ministerial act on the Defendants to perform a specific task in response to the *specific situation* that occurred between McCarthian and Stinson during their first encounter in the jail cell is simply not present.  McCarthian nonetheless attempts to create a genuine issue of material fact regarding whether Defendants were performing ministerial acts on the day of the incident.  First, he relies on statements provided by Melton and former Defendant Johnson.   Second, he relies on written policies of the Sheriff's Department.  Neither one of these, however, support the contention that the specific task of writing an incident report, or verbally debriefing another officer, was required as a result on the *specific situation* occurring between McCarthian and Stinson when they first encountered each other in the cell.  The issue here is not the specific task, which is the reporting of the incident whether in writing or orally, but instead the issue is what *specific situations* warrant performing those specific tasks.

The Sheriff's policies use phrases such as "threatens the safety of any person," "threatens the orderly control and security of the facility," and "the

potential for injury" to illustrate situations that would require reporting. Such statements identified by McCarthian in the Sheriff's policies are too broad to be considered *specified situations*. In order for an act to be ministerial act, there must be a great deal of specificity provided that allows the act to be one that is simple and absolute, requiring no judgment or deliberation on the part of the official. *See Glass*, 311 Ga. App. at 574. If an officer at the Fulton County Jail must use his personal judgment or deliberation to determine which *specific situations* between inmates threaten safety and order or pose potential for injury in order to decide whether to write an incident report or debrief another officer about a specific situation—then these tasks become discretionary. *Id.* Likewise, officers at the Fulton County Jail are making judgment calls when deciding whether a situation threatens the safety of a person or the jail facility.

In addition, McCarthian relies on the testimony of Melton and Johnson in an attempt to create a genuine issue of material fact regarding whether the Defendants failed to perform ministerial duties. Melton and Johnson, however, testified about what is required when there is a "fight" between inmates.[2] Melton also fleetingly testified about what should occur when there is an "altercation" between inmates.[3] Once again, there is not a enough specificity provided in Melton's and Johnson's

---

[2] Depo. of Melton, page 17 and 19; Depo. of Johnson, page 16. 22, and 23.
[3] Depo. of Melton, page 18.

testimony to support Plaintiff's theory.   McCarthian cannot simply use his characterization of the first incident, which he now characterizea as a "fight," to create the presence of a specified situation requiring the need for specified tasks outlined in the Sheriff's policies.

Further, neither the testimony of Melton nor Johnson support that the contention that the *specific situation* that occurred between Stinson and McCarthian during their first encounter in the cell *required reporting*. Based on McCarthian's description of what occurred during his first encounter with Stinson in the cell, it is not clear that such an encounter would actually constitute a "fight," or even an "altercation."   And even if the encounter between the two inmates during their first encounter was a "fight" or an "altercation, an officer still would have to use his judgment when deciding whether this *specific situation* between McCarthian and Stinson during their first encounter constituted a "fight," or even an "altercation, that would warrant an incident report.

Again, nothing in the record supports the contention that the *specific situation* between the inmates as described by McCarthian would require an incident report.   Although the policy states that "all incidents involving use of force that have potential for injury should be recorded….." these use of force incidents are those that require use of force by officers to control inmates—as

identified in Policy No. 1500-6 and in the  Fulton County Sheriff's Department SOP Manual Sec. 1.01(Use of Force).[4] Thus, this section of the policy does not apply to the present case because the encounter did not involve use of force by an officer at the jail.  Even if it had, this portion of the policy still provides officers the ability to make judgment calls regarding whether a use of force has potential of injury before it is required to be reported.

Moreover, it is clear from the evidence in the record that the decision to report an incident at the jail is not simple and absolute.  It is rather nonsensical to conclude that every encounter between inmates at the Fulton County Jail requires an incident report or even a verbal report to another officer.  If this were the case, a Fulton County Jailor would probably spend the majority of his shift writing reports about inmate encounters rather than maintaining order at the jail.  And although McCarthian believes that the first encounter between him and Stinson *should have* warranted an incident report, McCarthian's judgment cannot be substituted for that of an officer at the jail.

In addition, McCarthian erred in concluding that this case is factually analogous to *Glass*.  In *Glass*, it was clear that a *specified situation*—which was a tractor getting stuck—required a specified task, which was requesting a service

---

[4] See Defendants' Exhibit #4, pages 8-10, submitted with their reply brief.

truck.  It is rather apparent *a tractor being stuck* is a *specified situation*.  On the other hand, a situation that poses a threat of safety or potential injury is not something that cannot simply be identified or determined without using judgment. Further, many different types of a situations could constitute a threat of safety or injury—unlike the specified situation present in *Glass*.  Likewise, there are not many scenarios that could fall under a tractor being stuck—a tractor is either stuck or it simply isn't.  Thus, McCarthian's reliance on the facts in *Glass* to establish the existence of a ministerial act in this case is misplaced.

Moreover, McCarthian attempts to make the argument that Wise failed to perform a ministerial duty when he failed to learn the reason why Stinson had been removed from his cell during shift change.  McCarthian cites to a particular portion of the Sheriff's Roll Call policy to support this contention, however, McCarthian misstates the obvious language of the policy.  First, the language in the policy references the "shift watch commander or designee"—and not the shift supervisor, which was Wise's position at the time of the incident.  Second, the policy specifically lists four *broad* situations of which would require the shift watch commander to advise employees.  The policy does not create a duty requiring Wise to learn about a *specific situation* like the one mentioned by McCarthian—which would be the removal of a cell inmate.  Accordingly, nothing in the record supports

the contention that Wise, the shift supervisor, had a ministerial duty to ascertain *why* an inmate was removed from a cell—particularly when nothing about the removal of the inmate was reported.  Thus, there is no genuine issue of material fact regarding this issue, and Wise, along with Melton, did not fail to perform a ministerial duty.

## III.   McCarthian has not established a viable deliberate indifference claim against Melton.[5]

Although McCarthian attempts to maintain his deliberate indifference claim against Melton, he simply cannot establish the essential elements of this claim.

First, McCarthian fails to show that the first encounter between him and Stinson in the jail cell rose to a level that created a substantial risk of harm to which Melton was deliberately indifferent. *See Rodriguez*, 508 F.3d at 617-18 (11th Cir. 2007). McCarthian attempts to circumvent this by focusing on his allegation that Stinson threw feces around the cell; however, McCarthian never states that Stinson threw feces on or at him while they were in the cell. And even if he Stinson had thrown feces on McCarthian, that alone does not rise to the level of a substantial risk of harm that would maintain a deliberate indifference claim.

---

[5] Plaintiff has abandoned his deliberate indifference claim against Wise. (Plaintiff's Response Brief, page 23).

McCarthian's respond contends that the first encounter between the two inmates was a "fight" or an "attack," but his word choice, now, cannot outweigh the actual facts that he provided in his sworn deposition testimony—which clearly does not describe a violent "fight" or "attack" that posed a substantial risk to his safety.   Also, regardless of whether McCarthian felt fearful of his safety, this subjective feeling of fear by McCarthian, which he now claims to have had but never reported at the time of the incident, is not relevant to the inquiry of whether there was substantial risk of harm to him after the first encounter for the purpose of establishing his deliberate indifference claim under the Eighth Amendment.

Second, McCarthian again misses the mark when trying to show subjective knowledge on the part of Melton—even if there was substantial risk of harm present after the first encounter between McCarthian and Stinson in the cell. McCarthian wants to rely merely on his assertion that Melton was the one who removed Stinson from the cell after the first encounter between the inmates.  This removal of Stinson from the cell, even if it were true, is not enough however to establish that Melton had a subjective knowledge of a substantial risk of harm to McCarthian.  The law makes it clear that the officer must perceive the risk of harm and disregard it, in order to be held liable under a deliberate indifference claim pursuant to section 1983.  *See Rodriguez*, 508 F.3d at 616-17; *Carter v. Galloway*,

352 F.3d 1346, 1349 (11th Cir. 2003); *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003).

Simply asserting that Melton was the officer who initially removed Stinson from his cell—even if it was after Stinson had thrown feces in the cell and came into physical contact with McCarthian—is not enough to establish that Melton perceived a substantial risk of harm to McCarthian. Without first subjectively perceiving the substantial risk of harm to McCarthian, Melton also cannot be held liable for disregarding such a risk.

Lastly, McCarthian has failed to establish causation between Melton's alleged actions and the injury suffered by McCarthian. Although McCarthian contends that Melton was the jailor who initially placed Stinson in the cell with McCarthian and later removed him during the 7am-3pm work shift at the jail, McCarthian has not established any evidence in the record that supports his contention that these actions actually caused the "attack" that occurred later when Stinson was placed back in the cell during the 3pm-11pm shift. Neither party disputes that Melton was not the officer who placed Stinson back in the cell later that day after Stinson had been removed. Although McCarthian asserts that it was Melton's alleged failure to report the first encounter between the two inmates that caused the later "attack," this inference made by McCarthian is merely speculation

and conjecture that is unsupported in the record.  The record is devoid of evidence that supports McCarthian's conclusion that Stinson would not have been returned to the same cell with McCarthian by some other officer if only Melton had reported the first encounter between the two inmates in the cell. Thus, without establishing 1) a substantial risk of harm, 2) a subjective knowledge of that harm by Melton, 3) a disregard of that known risk by Melton, and 4) causation, McCarthian's deliberate indifference claim against Melton should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, and reasons provided in their initial brief, Defendants respectfully request that their motion for summary judgment be GRANTED.

Respectfully submitted this 2nd day of September, 2014.

OFFICE OF THE COUNTY ATTORNEY
R. David Ware
Georgia Bar No. 737756
County Attorney

**<u>/s/ Jenise S. Smith</u>**
Jenise S. Smith
Georgia Bar No. 163920
Jenise.smith@fultoncountyga.gov

Kaye Woodard Burwell

Georgia Bar No. 775060
Deputy County Attorney

Walter B. Yarbrough
Georgia Bar No.
Senior Attorney

OFFICE OF THE COUNTY ATTORNEY
141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia  30303
(404) 612-0246 (office)
(404) 730-6324 (facsimile)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **JOHNNIE MCCARTHIAN,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **Plaintiff,** | : | |
| | : | **1:11-CV-2654-WSD-GGB** |
| **v.** | : | |
| | : | |
| **RICHARD MELTON, et al.** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on September 2, 2014, I have presented this document in Times New Roman, 14 point type, and that I have electronically filed the foregoing **DEFENDANTS' REPLY BRIEF TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to McCarthian's attorney of record.

Respectfully submitted this 2nd day of September, 2014.

*/s/  Jenise S. Smith_*
Jenise S. Smith
Georgia Bar No. 163920

OFFICE OF THE COUNTY ATTORNEY

141 Pryor Street, S.W.

Suite 4038

Atlanta, Georgia  30303

(404) 612-0246 (office)

(404) 730-6324 (facsimile)