## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOHNNIE MCCARTHIAN,

           Plaintiff,

     v.                                  1:11-cv-2654-WSD

SGT. KHALID WISE and D.O.
RICHARD MELTON,

              Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary

Judgment [89].[1]

## I.    BACKGROUND

    A.    Procedural History

Plaintiff filed his complaint in this action in August 2011.  [1]  Plaintiff

complained that on July 27, 2011, while he was an inmate at the Fulton County Jail

(the "Jail"), Jail officials placed a combative inmate in his cell, removed the inmate

after an altercation, and later returned him to the cell.  (Id. at 4-7.)  The Court

construed Plaintiff's complaint as asserting a claim under 42 U.S.C. § 1983

---

[1] The Court **WITHDRAWS** the reference to the Magistrate Judge so the Court can
consider the Motion for Summary Judgment directly.

alleging that in moving the inmate back to Plaintiff's cell, Defendants were deliberately indifferent to Plaintiff's safety in violation of the Eighth Amendment to the United States Constitution.  [6, 13]  The Court allowed this claim to proceed and dismissed Plaintiff's deliberate indifference to medical needs claim.  [13]  After the Court dismissed certain of the Defendants, Plaintiff dismissed the remaining Defendants except for Defendants Richard Melton and Khalid Wise, [13, 18, 81, 83].

On June 5, 2014, counsel entered his appearance on behalf of Plaintiff.  [70]  The parties conducted additional discovery, including the deposition of Plaintiff.

Discovery closed on July 7, 2014.  On that day, Plaintiff moved to amend his complaint to add a state-law claim against Melton and Wise.  [82]  The new claim is that Defendants negligently failed to perform ministerial duties imposed by Jail policies.[2]  (Id. at 6-10.)

On July 23, 2014, the Court granted Plaintiff's motion to add the state-law claims.  [87]  The pending claims against Defendants Melton and Wise thus are a deliberate indifference claim under § 1983 and a state-law claim for negligent

---

[2] Georgia law provides: "all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions."  Ga. Const. art. I, § 2, ¶ IX.

performance of ministerial duties.

On July 28, 2014, Defendants filed their motion for summary judgment. [89]  In his response, Plaintiff agreed to dismiss his § 1983 claim against Wise. [93 at 16 n.20, 23]  Plaintiff opposes summary judgment on his § 1983 claim against Melton, and on his state-law claim against both Defendants.  (Id.)

B.    Facts[3]

On July 27, 2011, Plaintiff was an inmate in the "Three North" unit of the Jail, in which inmates with mental health issues are housed.  (SUMF ¶ 1; SAMF ¶¶ 2, 13.)  Melton was a detention officer in Three North who worked the 7:00 a.m. to 3:00 p.m. shift.  (SUMF ¶¶ 2, 4.)  Wise was a deputy sergeant and floor supervisor in Three North who worked the 3:00 p.m. to 11:00 p.m. shift.  (Id. ¶¶ 3, 5.)

During the 7:00 a.m. to 3:00 p.m. shift on July 27, 2011, inmate Arthur

---

[3] These facts are taken from the following statements of facts submitted in accordance with Local Civil Rule 56.1: Defendants' Statement of Undisputed Material Facts [89-8] ("SUMF"), Plaintiffs' Response to Defendants' SUMF [93-5] ("Resp. SUMF"), and Plaintiffs' Statement of Additional Material Facts [93-4] ("SAMF").  Where a party disputes a factual assertion contained in a statement of facts, the Court also considered the specific exhibits cited in support of the assertion.  See LR 56.1(B)(3), NDGa (providing that the court deems a party's SUMF citation as supportive of the asserted fact "unless the respondent specifically informs the court to the contrary in the response").  The facts described in this Order are undisputed unless otherwise noted.

Stinson was placed in Plaintiff's cell.  (Id. ¶ 6.)  Plaintiff testified that Melton

brought Stinson to the cell and that Melton appeared to be coaching Stinson on

"maintaining his emotion, I guess" as they arrived and to "motivate [Stinson]

. . . to continue moving."  (SAMF ¶ 15; Pl. Dep. [89-4] at 21.)  Plaintiff further

testified that after seeing Stinson's "bad attitude" upon entering the cell, he said to

Melton something to the effect of "I don't like this guy."  (Pl. Dep. at 21-22.)

Melton shrugged, locked the cell door, and left.  (Id.)  Plaintiff did not tell Melton

at the time that he was afraid of Stinson or that he had any issue regarding Stinson.

(Id.)  Melton does not recall transporting an inmate to Plaintiff's cell on

July 27, 2011.  (Melton Aff. [89-1] ¶ 8.)

        Stinson did not speak to Plaintiff, but soon after entering the cell, Stinson

became angry and began throwing his and Plaintiff's belongings around.  (SAMF

¶¶ 16, 18.)  Stinson used a cup to scoop feces out of the toilet and began hurling

the feces around the cell, and under the cell door.  (Id. ¶ 19.)  Stinson ignored

Plaintiff's command to stop.  (Id. ¶ 20.)  Stinson then began pushing Plaintiff.  (Id.

¶ 21.)  Believing Stinson was trying to hurt him, Plaintiff restrained Stinson from

behind and called for help.  (Id. ¶¶ 23, 26.)  Plaintiff did not sustain any injury

from this encounter, did not seek medical attention, and did not fear for his safety

as a result of the altercation.  (SUMF ¶¶ 8-9; Pl. Dep. at 45-46, 64.)

Melton and an unidentified officer arrived at the cell while Plaintiff was restraining Stinson.  (SAMF ¶¶ 27, 29; Pl. Dep. at 66-67.)  When they arrived, Melton looked through the window on the cell door and saw Plaintiff restraining Stinson, and that they were "tussling."  (Id.)  Melton unlocked the cell door, ordered Stinson to stop, grabbed Stinson and removed him from the cell.  (SAMF ¶¶ 30-31.)  Melton testified that he does not recall an altercation between Plaintiff and another inmate on July 27, 2011, he did not receive an oral or written report of any such incident that day, and he did not witness or respond to an incident in the cell.  (Melton Aff. ¶¶ 9-13.)

Plaintiff remained in his cell after Stinson was removed.  At some later point Plaintiff went to the Jail commissary.  (SUMF ¶ 12; Resp. SUMF ¶ 11; SAMF ¶¶ 32-33.)  There he saw Stinson, but did not interact with him.  (Id.)  Plaintiff returned to his cell and remained there alone for the remainder of the 7:00 a.m. to 3:00 p.m. shift.  (SUMF ¶ 13; SAMF ¶ 33.)

Wise, the floor supervisor, began his shift at 3:00 p.m.  (Wise Aff. [89-2] ¶¶ 7-8.)  At the shift start, Wise discovered that Stinson had been removed from Plaintiff's cell, where he had been assigned.  (Id.)  Wise was not aware of an earlier altercation between Stinson and Plaintiff.  (SUMF ¶ 11.)  Because there was no documentation showing why Stinson was moved from his assigned cell, Wise

directed officers to return Stinson to the cell in which Plaintiff was confined. (Wise Aff. ¶ 9.)

Officer Johnson returned Stinson to Plaintiff's cell.  (Pl. Dep. at 48-50.) Soon after the cell door was closed and locked, and after Johnson left, Stinson punched Plaintiff several times in the face, pushed him, and tried to choke him. (SAMF ¶¶ 40-42.)  Plaintiff eventually restrained Stinson by placing him in a headlock.  (Id. ¶¶ 43-44.)

Officer Johnson went to the cell a few minutes later, handcuffed Stinson, and removed him and Plaintiff from the cell.  (Id. ¶ 45; Pl. Dep. 56-57.)  Plaintiff was taken to the infirmary because he was bleeding profusely from his mouth. (SUMF ¶ 16; SAMF ¶ 45.)  Plaintiff had swelling in his head and neck, had a cut in the area of his eye, and had sore ribs.  (Pl. Dep. at 59-60.)

Plaintiff had not met Stinson before July 27, 2011, and, thus, had not complained about Stinson before that date.  (SUMF ¶¶ 17-18.)  After the July 27, 2011 incident, Plaintiff filed grievances on his two altercations with Stinson.  (Pl. Dep. at 62-63.)

## II.   DISCUSSION

### A.   Legal Standard on Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Id. R. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings." Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record." Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.    Section 1983 and Qualified Immunity

Section 1983 permits a plaintiff to bring an action in federal court against persons who, under the color of state law, violate the plaintiff's rights under the United States Constitution or federal law.[4]  Melton argues he is entitled to summary judgment on Plaintiff's § 1983 claim because he is entitled to qualified immunity.

---

[4] The Court has jurisdiction over Plaintiff's § 1983 claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3). Ortega v. Schramm, 922 F.2d 684, 690 (11th Cir. 1991).

8

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (citations and quotations omitted).  The framework for analyzing a defense of qualified immunity is well established:

> To be eligible for qualified immunity, the official must first establish that he was performing a "discretionary function" at the time the alleged violation of federal law occurred.  Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity.  In order to demonstrate that the official is not entitled to qualified immunity, the plaintiff must show two things: (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was "clearly established" at the time he did it.

Crosby, 394 F.3d at 1332.  "For purposes of determining qualified immunity, the facts are as alleged and supported by affidavits and deposition testimony, and are taken in the light most favorable to the plaintiff."  Bruce v. Beary, 498 F.3d 1232, 1236 n.2 (11th Cir. 2007); Bishop v. Avera, 177 F.3d 1233, 1235 n.2 (11th Cir. 1999) ("In reviewing a summary judgment motion predicated on qualified immunity, the court must resolve all factual disputes in favor of the plaintiff." (citing Johnson v. City of Fort Lauderdale, 126 F.3d 1372, 1378 (11th Cir. 1997))); accord Saucier v. Katz, 533 U.S. 194, 201 (2001).

9

"A right is clearly established if, in light of preexisting law, the unlawfulness of the official's conduct is apparent." Cooper v. Dillon, 403 F.3d 1208, 1220 (11th Cir. 2005). This standard does not require that the specific conduct in question be found previously to be unlawful; but that the law gives an official "fair warning" that his conduct is unlawful. Id. (citing Hope v. Pelzer, 536 U.S. 730, 741 (2002)). Qualified immunity therefore "ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful." Id. "[T]he relevant question on a motion for summary judgment based on a defense of qualified immunity is whether a reasonable official could have believed his or her actions were lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." Stewart v. Baldwin Cnty. Bd. of Educ., 908 F.2d 1499, 1503 (11th Cir. 1990).

The parties do not dispute that Melton was acting within his discretionary authority. The Court thus considers, viewing the facts in the record in the light most favorable to Plaintiff, whether Plaintiff has demonstrated that Melton is not entitled to qualified immunity. Crosby, 394 F.3d at 1332.

C.    Deliberate Indifference to an Inmate's Safety

The Constitution requires officials who have custody of inmates to provide them with "reasonable safety." See DeShaney v. Winnebago Cnty. Dep't of Soc.

10

Servs., 489 U.S. 189, 199-200 (1989).   To prevail on a claim for deliberate

indifference to his safety, an inmate must show that: (1) he faced an objectively

substantial risk of serious harm; (2) jail officials consciously disregarded that risk,

i.e., were deliberately indifferent to it; and (3) there is a causal connection between

the officials' deliberate indifference and the resulting harm.   Farmer v. Brennan,

511 U.S. 825, 834 (1994); Goodman v. Kimbrough, 718 F.3d 1325, 1331 (11th

Cir. 2013).

      "Proof of deliberate indifference requires a great deal more than does proof

of negligence," as jail officials must act with "conduct that is more than gross

negligence."   Goodman, 718 F.3d at 1332 (quotation marks omitted).   Jail officials

are not deliberately indifferent if they fail to appreciate a substantial risk of harm to

an inmate's safety of which they should have been aware; they must have actual

knowledge of the risk and consciously disregard it.   Farmer, 511 U.S. at 837

("[T]he official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the

inference.").   In short, the inmate must prove the following to establish deliberate

indifference: "(1) subjective knowledge of a risk of serious harm; (2) disregard of

11

that risk; (3) by conduct that is more than gross negligence."[5]  <u>Goodman</u>, 718 F.3d

at 1332 (quotation marks omitted).

D.    <u>Analysis</u>

The only § 1983 claim remaining in this case is Plaintiff's claim that Melton

was deliberately indifferent to his safety.  Plaintiff contends that Melton enabled

Stinson, a dangerous inmate, to be returned to Plaintiff's cell despite knowing that

returning Stinson to the cell posed a substantial risk of serious harm to Plaintiff.

(Doc. 93 at 16-22.)

Viewing the record evidence in the light most favorable to Plaintiff, the

Court concludes that the evidence does not support a finding that there is any

dispute of material fact and does not support that Melton knew Plaintiff faced a

substantial risk of serious harm and was deliberately indifferent to it.

It is undisputed that Plaintiff did not interact with Stinson before he came to

Plaintiff's cell on July 27, 2011, and Melton did not know of any issues or

problems with Stinson prior to that time.  The only evidence that Plaintiff faced a

substantial risk of serious harm is Plaintiff's first altercation with Stinson in the

cell.  Plaintiff testified that Melton brought Stinson to his cell prior to the first

---

[5] The legal standard for a claim of deliberate indifference to an inmate's safety is
the same for pre-trial detainees and convicted inmates.  <u>Craig v. Floyd Cnty., Ga.</u>,
643 F.3d 1306, 1310 (11th Cir. 2011).

altercation and removed him from the cell following that altercation.

Plaintiff also states that when Melton brought Stinson to Plaintiff's cell he had to "motivate" Stinson "to continue moving" and coach him on "maintaining his emotion" because Stinson "didn't want to go in the cell."  (Pl. Dep. at 21.) Plaintiff testified that Stinson was not disruptive and was not talking.  (Id. at 21, 24.)  Plaintiff perceived that Stinson "just seemed to have a bad attitude."  (Id. at 21.)  Plaintiff thinks he told Melton "I don't like this guy . . . and that was it."  (Id. at 22.)  The Court, for the purposes of this motion, accepts Plaintiff's version of these events.

Plaintiff claims that after Melton put Stinson in the cell and departed the cell area, Stinson started "acting strange."  (Id. at 23.)  Melton was not present when Stinson tossed items, including feces, around the cell and pushed Plaintiff, and there is not any evidence he was aware of Stinson's conduct until sometime later.

Plaintiff testified only that when Melton came to Plaintiff's cell, Plaintiff had restrained Stinson and Melton saw that they were "physically engaged," "tussling" and that feces were on the floor.  (Pl. Dep. at 65-66.)  There is not any evidence that Plaintiff told Melton what happened in the cell.  Melton did not see any injury to Plaintiff because the undisputed evidence is that Plaintiff did not suffer any physical injury during the first altercation with Stinson.  (Id. at 45-46,

64.)

This evidence does not support a finding that Plaintiff faced a "substantial" risk of "serious" harm, a requirement to prevail on the deliberate indifference claim.  See Farmer, 511 U.S. at 834; Goodman, 718 F.3d at 1331.  A reasonable juror could not conclude from Plaintiff's account of the first altercation that Plaintiff suffered a substantial risk of serious harm if Stinson returned to the cell.

The evidence also does not support that Melton knew of a substantial risk of serious harm if Stinson returned to Plaintiff's cell after the first altercation.  That Melton coached Stinson on maintaining his emotion and motivated him to initially enter the cell does not support that Melton was aware there existed a risk of substantial harm to Plaintiff.  Though Melton may have seen some "tussling" between Stinson and Plaintiff, it did not result in any injury to anyone.  Before a jail officer's "awareness [of the risk an inmate poses] arises to a sufficient level of culpability, there must be much more than mere awareness of [the inmate's] . . . generally problematic nature."  Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003).

The evidence offered by Plaintiff does not support that Melton knew or suspected that returning Stinson to Plaintiff's cell would pose a substantial risk of serious harm to Plaintiff.  See id. at 1350.

14

There also is not any evidence that Melton subjectively knew of a risk –
assuming any was even manifested – or that Melton disregarded it.  The
undisputed evidence also is that Melton did not return Stinson to Plaintiff's cell.
Stinson was returned to the cell by Wise after Melton's shift ended.  Wise did not
know that an altercation had occurred between Stinson and Plaintiff.  Melton's
failure to report the initial tussling encounter he observed between Plaintiff and
Stinson to other Jail officials does not constitute deliberate indifference and does
not even suggest Melton's conduct rose to the level of gross negligence, which
does not constitute a § 1983 violation.  See Goodman, 718 F.3d at 1332.  There is
no basis here to conclude that Melton consciously disregarded any risk posed by
Stinson by not reporting the altercation.

"The deliberate indifference standard . . . is far more onerous than normal
tort-based standards of conduct sounding in negligence: Merely negligent failure to
protect an inmate from attack does not justify liability under § 1983." Goodman,
718 F.3d at 1332 (quotation marks omitted).  There is no genuine issue of fact in
this case as to whether Melton was deliberately indifferent to Plaintiff's safety
when he did not report the initial altercation between Plaintiff and Stinson.  A
reasonable juror could not conclude that Melton's conduct constituted a
constitutional violation, and Melton is entitled to qualified immunity.  Because

Plaintiff has not met his burden of showing that Melton is not entitled to qualified immunity, summary judgment is required to be entered for Melton on Plaintiff's § 1983 claim.  See Crenshaw v. Lister, 556 F.3d 1283, 1293 (11th Cir. 2009) ("[B]ecause there was no constitutional violation, we need not address whether the constitutional right at issue was clearly established [for purposes of qualified immunity].").

E.   State Law Claim

The Court has entered summary judgment for Melton on the only federal claim remaining in this case.  District courts "may decline to exercise supplemental jurisdiction over a [state-law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."  28 U.S.C. § 1367(c). "[D]istrict courts [are encouraged] to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."  Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) (citing L.A. Draper & Son v. Wheelabrator–Frye, Inc., 735 F.2d 414, 428 (11th Cir. 1984)).

Plaintiff did not assert his state-law claims until after discovery had closed. [82, 87]  There will be no redundant litigation or prejudice to the parties by declining jurisdiction over those claims now and allowing Plaintiff to pursue them in state court.  The state-law claims arise under the Georgia Constitution, and

16

Georgia's state courts are best suited to interpret and enforce them.  See Ga. Const. art. I, § 2, ¶ IX; see also Walker v. City of Atlanta, No. 1:11-cv-1167-JEC, 2014 WL 1224458, at *9 (N.D. Ga. Mar. 24, 2014) (declining to exercise jurisdiction over state-law claims "[b]ecause all the claims over which the Court had original jurisdiction now have been removed from the case due to the Court's decision to grant defendants' motion for summary judgment with respect to plaintiff's federal claim").  The Court declines to exercise its supplemental jurisdiction over the remaining state-law claim.

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [89] is **GRANTED** as to Plaintiff's § 1983 claims against Defendants.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claim, which is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED** this 10th day of September, 2014.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE